**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **D.B. and K.T.**

**No. 21-0184** (Kanawha County 19-JA-537 and 19-JA-538)

**MEMORANDUM DECISION**

Petitioner Mother A.T., by counsel Peggy L. Collins, appeals the Circuit Court of Kanawha County's February 9, 2021, order terminating her parental rights to D.B. and K.T.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Christopher C. McClung, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) adjudicating her as an abusing parent, (2) withholding additional disclosures made by K.T., (3) denying her request for a post-adjudicatory improvement period, and (4) terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2019, the DHHR filed an abuse and neglect petition alleging that the parents failed to protect the children from sexual abuse. The DHHR alleged that eight-year-old K.T. disclosed that her grandfather—who resided in the parents' home with her—had "touched her breasts, butt, and genitals on numerous occasions." K.T. also disclosed that the grandfather would engage in these acts while petitioner was sitting next to them. According to the petition, K.T. disclosed that she told her parents about the sexual abuse but the parents failed to protect her. The DHHR alleged that the stepfather would frequently become angry at K.T. when she attempted

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

to inform him about the sexual abuse. According to the petition, K.T. was also told to sleep far away from the parents on a camping trip. K.T. disclosed that she became scared on that occasion and attempted to go into the parents' tent, but they told her to go back to her tent so she would learn to live on her own. The DHHR further alleged that the parents failed to provide the children with the necessary food, clothing, supervision, and housing.

The circuit court held a series of adjudicatory hearings beginning in November of 2019. At one of the hearings, a Child Protective Services ("CPS") manager testified as to a previous child abuse and neglect case involving petitioner's nephew, who is not at issue on appeal, and K.T.'s grandfather. Specifically, the case manager testified that the grandfather relinquished any and all custodial rights to the child during that case. During the prior proceedings, the DHHR presented evidence that the grandfather sexually abused the child, based upon statements and physical evidence that had come to light, including a Child Advocacy Center ("CAC") interview with the child. The case manager testified that petitioner was aware of the allegations and should have been concerned for the safety of K.T. The case manager testified she had approximately eight to ten conversations with petitioner about the grandfather's sexual abuse of the nephew. The case manager further testified that the grandfather and the nephew were living in the parents' home at the time of the investigation, making it difficult to believe that the parents were unaware of the proceedings upon the sudden removal of the child from their home. Next, petitioner testified that she did not "believe that anything happened" in regard to the sexual abuse allegations involving the grandfather and her nephew. The court then continued the hearing to allow the DHHR to present further evidence.

In September of 2019, the DHHR filed an amended petition, adding more allegations against the parents. According to the amended petition, petitioner tested positive for methamphetamine upon the birth of D.B. in August of 2017. The DHHR also alleged that the father tested positive for marijuana following testing at the preliminary hearing. The amended petition set forth that K.T. disclosed additional details about her sexual abuse. The DHHR alleged that K.T. informed the stepfather about the grandfather's sexual abuse; that he did nothing to protect her; and that, after she told him, he told her to go outside and play. According to the amended petition, after learning about the sexual abuse, the parents still allowed K.T. and the grandfather to sleep together. The DHHR alleged that the parents had substance abuse issues that prevented them from being appropriate parents and that the parents had failed to protect the children from sexual abuse.

The circuit court held a continued adjudicatory hearing in February of 2020 wherein a service provider testified that the parents tested positive for methamphetamine on multiple screens over the last few months. The service provider also testified that she was concerned that neither parent had entered into any treatment program, as encouraged by the court, and that they were still living with the children's grandfather. The circuit court held a series of additional hearings over the next few months, during which petitioner continued to test positive for controlled substances.

Finally, the parents testified at the continued adjudicatory hearing in September of 2020. The court noted that the parents offered "hesitant admissions" that they believed that the

grandfather sexually abused K.T. The court also disclosed a communication from the children's foster mother, which revealed that K.T. had divulged that the grandfather had shown her pornographic videos on his phone. Petitioner objected to the new evidence from the foster parents, and the circuit court did not consider it at adjudication. After considering the evidence and testimony from the adjudicatory hearings, the court found that the parents should have been more aware of the environment that the children were in and failed to protect K.T. from sexual abuse after gaining knowledge of the abuse. The court also found that the parents exposed the children to substance abuse and failed to provide a stable home for the children. As a result, the circuit court adjudicated the parents as abusing and neglecting because they failed to protect and properly supervise the children. Petitioner moved for a post-adjudicatory improvement period, which the court held in abeyance.

After a continuance, the circuit court held a dispositional hearing in January of 2021, wherein a service provider testified that the parents had been inconsistent in communication and still lacked stable housing. The service provider also testified that the parents tested positive for methamphetamine and marijuana on multiple screens while missing other screens altogether.

At the conclusion of the hearing, the circuit court denied petitioner's motion for an improvement period. In light of the evidence presented at the dispositional hearing, the circuit court found that the parents had more than a year to correct the problems of abuse and neglect but failed to do so. The circuit court also found that the parents had not followed through with rehabilitative services, as evidenced by the continuation of conditions that threatened the health and welfare of the children. Based upon this evidence, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interests of the children to terminate petitioner's parental rights.[2] The circuit court entered an order reflecting its decision on February 9, 2021. Petitioner appeals from this order.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the

---

[2]D.B.'s father's parental rights were terminated during the proceedings below. The father of K.T. is deceased. According to the parties, the permanency plan for the children is adoption by their foster family.

evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

First, petitioner argues that the circuit court erred in adjudicating her as an abusing parent. Petitioner argues that the circuit court made several erroneous findings about her knowledge of the grandfather's sexual abuse of K.T. Specifically, she argues that it was error to rely on K.T.'s disclosures during her CAC interview or DHHR witness testimony to prove that she failed to protect the child from sexual abuse when petitioner testified to the contrary. Therefore, it was error for the circuit court to find that her failure or inability to supervise the children constituted abuse or neglect. We disagree.

We have previously held as follows:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Further, West Virginia Code § 49-1-201 defines "abused child" as

[a] child whose health or welfare is being harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts, attempts to inflict, *or knowingly allows another person to inflict*, physical injury or mental or emotional injury, upon the child or another child in the home.

(Emphasis added).

Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as an abusing parent. On appeal, petitioner's arguments in support of this assignment of error are all predicated on her assertions that the circuit court erroneously weighed the evidence in question. However, the rulings to which petitioner cites all come down to the issue of credibility, and as this Court has long held, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997).

4

First, petitioner attacks K.T.'s disclosures of sexual abuse as "vague" and "nonspecific." Petitioner acknowledges that the DHHR presented uncontested evidence that the grandfather touched K.T. However, petitioner argues that the most specific statement the child made to her was that she was uncomfortable. Further, petitioner contends that she never witnessed anything sexual between K.T. and the grandfather. However, the record shows that the circuit court reviewed this testimony, as well as the child's CAC interview, and found the child's allegations to be credible. Further, the court found that after learning about the sexual abuse by the grandfather, petitioner still allowed K.T. and the grandfather to sleep together. A CPS case manager also testified that she repeatedly warned the parents about concerns that the grandfather could sexually abuse the children. In light of the above evidence, the circuit court properly found that K.T. was sexually abused in the home and that petitioner was aware of said abuse but ignored it. Accordingly, we find no error in the circuit court's adjudication of petitioner.

Next, petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period because when "disposition occurred, [she] had admitted her problems, sought and completed a substance abuse program, and was living in an appropriate house." Petitioner argues that these efforts demonstrate that she could have substantially corrected the conditions of abuse and neglect if granted an improvement period. We find petitioner's arguments unavailing.

This Court has held that an individual "charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the[y are] likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

Contrary to petitioner's argument, we see no error in the circuit court's determination that petitioner was not likely to fully participate in an improvement period. The circuit court found that petitioner failed to acknowledge or take any responsibility for the conditions that led to the abuse and neglect of the children. Only near the end of the proceedings did the circuit court find that the parents offered "hesitant admissions" that the grandfather abused K.T. While petitioner argues that

she proved she was likely to participate in an improvement period by participating in a substance abuse treatment program, visiting with the children, and obtaining appropriate housing, these actions alone could not have been successful without petitioner's recognition of her abuse and neglect of K.T. and D.B. Further, a DHHR caseworker testified to petitioner's lack of candor and acknowledgement of wrongdoing. As such, there is ample evidence that petitioner's repeated failures to acknowledge the conditions of abuse and neglect resulted in her inability to establish that she was likely to fully participate in an improvement period. Given this evidence, we find no error in the circuit court's decision to deny petitioner a post-adjudicatory improvement period.

Next, petitioner argues that the circuit court erred in withholding additional disclosures made by K.T. to the foster parents for months during the adjudication phase of the proceedings. Petitioner contends that these disclosures were more detailed and substantive than disclosures that K.T. made in her CAC interview concerning sexual abuse. Petitioner also argues that K.T.'s disclosures of abuse during her CAC interview were contested and that petitioner could not have known that the grandfather was sexually abusing the child. As such, petitioner asserts that the withholding of the additional disclosures from the foster parents was prejudicial to her and the presentation of her case contesting adjudication. We find petitioner's arguments without merit.

First, petitioner notes that the circuit court revealed at a hearing in September of 2020 that K.T.'s foster parents sent an email in June of 2020 to a CPS worker containing further and explicit disclosures by K.T. about the grandfather's abuse. Petitioner contends that the CPS worker shared these additional disclosures only with the guardian and the court, and the court subsequently withheld this evidence from June of 2020 until a hearing in September of 2020. However, petitioner objected to the circuit court's consideration of the additional disclosures and, in response, the circuit court agreed not to consider them for adjudication, thereby granting petitioner the relief she sought. In her brief on appeal, petitioner acknowledges that the circuit court stated that it did not take the additional evidence into account in reaching adjudication. Accordingly, we find that petitioner suffered no prejudice with regard to the additional disclosures because the circuit court did not consider them in determining adjudication.

In support of this assignment of error, petitioner also argues that the circuit court erred in relying on K.T.'s disclosures from her CAC interview. Specifically, petitioner argues that the grandfather touching the child's bottom, breasts, and legs do not qualify as "sexual contact" under West Virginia Code § 61-8B-1(6).[3] Petitioner argues that there was no evidence that the grandfather's acts of touching were done for his sexual gratification. However, petitioner

---

[3]West Virginia Code § 61-8B-1(6) provides:

"[s]exual contact" means any intentional touching, either directly or through clothing, of the breasts, buttocks, anus or any part of the sex organs of another person, . . . where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party.

acknowledges that there was testimony regarding a previous abuse and neglect proceeding involving the grandfather and her nephew with allegations of sexual abuse that resulted in the grandfather relinquishing custody of the child. Indeed, the record reflects that petitioner was repeatedly warned by the DHHR about possible sexual abuse of the children. A CPS worker testified that she spoke with petitioner on eight to ten occasions. Accordingly, we find that there was substantial evidence to support petitioner's adjudication as an abusing and neglecting parent.

Finally, petitioner takes issue with the timeframe from adjudication to termination, arguing that she should have been given additional time and an opportunity to demonstrate that she could correct the conditions of abuse and neglect. However, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 9, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton